FILED

06/30/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0718

DA 25-0718

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 140N

IN RE THE PARENTING OF
A.M.G.,

     A Minor Child,

THOMAS GAMBARDELLA,

     Petitioner and Appellee,

  and

DAVYS ARRINGTON (f/k/a LOWE),

     Respondent and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DR 24-791
                Honorable Jason T. Marks, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Jill A. Hughes, JLaw, PLLC, Missoula, Montana

     For Appellee:

          Lucy Hansen, Hansen Law Practice, PLLC, Missoula, Montana

                    Submitted on Briefs:  June 3, 2026
                            Decided:  June 30, 2026

Filed:

                      _____
                               Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1  Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2  Appellant Davys Arrington (Arrington) appeals the Findings of Fact, Conclusions of Law and Order Denying Respondent's Notice of Intent to Move and Motion to Amend Parenting Plan issued by the Fourth Judicial District Court, Missoula County, on June 23, 2025.

¶3  Arrington asserts the District Court: (1) abused its discretion in adopting the parenting plan proposed by Petitioner Thomas Gambardella (Father) in the event Arrington moves to Idaho; (2) violated Arrington's constitutional right to travel; (3) abused its discretion by relying on incomplete findings, making conclusions without related findings, admitting hearsay, and missing the balance of the parties' interests; and (4) abused its discretion by denying relief from judgment and treating the case as consolidated with a related case without an order of consolidation.[1]  We affirm.

---

[1] We note that at the outset of the contested hearing on April 23, 2025, the District Court called both this case—DR 24-791—and a case regarding a parenting plan for A.M.G.'s half-sibling—DR 16-622—and noted that all parties and their counsel were present. The court stated, "This is a joint hearing for purposes of addressing Respondent's Notice of Intent to Move and Motion to Amend Parenting Plan in each of the cases. Are there any issues the parties want to talk about before I start hearing testimony?" Neither party set forth any objection to proceeding on a joint hearing and the hearing proceeded accordingly. Now on appeal, Arrington asserts for the first time that the District Court erred in treating the related cases as consolidated without an order of consolidation. First, it is clear from the record the court did not consolidate DR 16-622 and

¶4     In 2022, Father commenced a parenting case in Ravalli County. The parties ultimately stipulated to a Final Parenting Plan—providing for shared parenting on a 50/50 basis—which was adopted and approved by the District Court on August 22, 2022. On October 18, 2024, Arrington filed a Notice of Intent to Move, Response to Motion to Amend and Cross-Motion to Amend Parenting Plan along with a proposed parenting plan, which she anticipated coming into force upon her relocation to Idaho. Upon reviewing her notice and accompanying documents and Father's resistance thereto, the Ravalli County District Court noted that neither party resided in Ravalli County, each having moved to Missoula. The court also noted there to be a separate action, DR 16-622, filed in Missoula County in which Arrington had filed a similar notice of her intent to move. As such, the Ravalli County District Court conferred with the Missoula County District Court, determined the proper venue to adjudicate this matter to be the Missoula County District Court, and issued an order transferring jurisdiction to the Missoula County District Court before Judge Marks.

¶5     As to her intention to move, Arrington's expressed desire to relocate to Idaho was primarily related to her recent marriage to Taylor Arrington who resides in Caldwell, Idaho. Father objected to Arrington's notice and motion, and likewise included his proposed parenting plan—anticipating A.M.G. to remain on a primary basis with him in the event Arrington relocated to Idaho. The District Court held a contested hearing on April 23,

DR 24-791, it merely held a joint hearing. Further, this Court does not address issues raised for the first time on appeal as we will not place a district court in error for an action in which the appealing party acquiesced or actively participated. *State v. Favel*, 2015 MT 336, ¶ 22, 381 Mont. 472, 362 P.3d 1126. As such, we do not address this claimed error further.

3

2025.  Thereafter, the court denied Arrington's motion to amend the parenting plan and ordered that, in the event Arrington were to relocate to Idaho, Father's amended parenting plan would be adopted, under which A.M.G. would remain in Montana and reside with Father on a primary basis.  Arrington appeals.

¶6      We review the underlying findings in support of a district court's decision regarding modification of a parenting plan under the clearly erroneous standard.  *In re Parenting of G.M.N.*, 2019 MT 18, ¶ 10, 394 Mont. 112, 433 P.3d 715 (citing *Guffin v. Plaisted-Harman*, 2010 MT 100, ¶ 20, 356 Mont. 218, 232 P.3d 888).  We review a district court's conclusions of law to determine if they are correct.  *In re Parenting of G.M.N.*, ¶ 10 (citing *In re Parenting of C.J.*, 2016 MT 93, ¶ 12, 383 Mont. 197, 369 P.3d 1028).

¶7      "A district court has broad discretion when considering the parenting of a child, and we must presume the court carefully considered the evidence and made the correct decision."  *In re Parenting of G.M.N.*, ¶ 11 (citation omitted).  It is not the function of this Court to reweigh conflicting evidence or substitute its judgment regarding the strength of the evidence for that of the district court.  *In re Parenting of G.M.N.*, ¶ 11 (citing *In re A.F.*, 2003 MT 254, ¶ 24, 317 Mont. 367, 77 P.3d 266).  The ultimate test for adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented.  *In re Parenting of G.M.N.*, ¶ 11 (citing *In re Marriage of Wolfe*, 202 Mont. 454, 458, 659 P.2d 259, 261 (1983)).  Absent clearly erroneous findings, we will not disturb a district court's decision regarding a parenting plan unless there is a clear abuse of discretion.  *In re Parenting of G.M.N.*, ¶ 11 (citing *In re Parenting of C.J.*, ¶ 13).

4

¶8     Arrington contends the District Court's decision impermissibly infringed upon her fundamental right to travel. We do not agree. We have previously recognized:

> Cases involving a proposed relocation of a parent with a child are difficult as they are rarely amenable to compromise and involve balancing a parent's right to resettle in another location, protecting the best interests of the child, and the competing rights of the other parent. Although the mother has a constitutional right to travel and relocate, this right does not outweigh the father's right to have regular and ongoing parental contact with his [son] and the child's right to a relationship with [his] father.

*In re Parenting of G.M.N.*, ¶ 12 (internal citation omitted). The District Court properly applied this principle. It acknowledged that the parties' Stipulated Final Parenting Plan established an equal 50/50 parenting arrangement and that A.M.G. had been raised in a manner that afforded him frequent, continuing, and meaningful contact with both parents and extended family. The court's decision does not restrict Arrington's ability to relocate; it merely determines that A.M.G.'s best interests are not served by relocating with her. This does not constitute a violation of Arrington's constitutional right to travel.

¶9     In proposed relocation cases, the court must try to reconcile the interests of both parents with the best interest of the child. As discussed in *In re Parenting of G.M.N.*, §§ 40-4-212 and -219, MCA, set forth the factors a court considers in determining if amendment to a parenting plan is in the best interest of the child. In pertinent part, § 40-4-212, MCA, provides:

> (1) The court shall determine the parenting plan in accordance with the best interest of the child. The court shall consider all relevant parenting factors, which may include but are not limited to:
>
>     (a) the wishes of the child's parent or parents;
>
>     (b) the wishes of the child;

5

(c) the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interest;

(d) the child's adjustment to home, school, and community;

(e) the mental and physical health of all individuals involved;

(f) physical abuse or threat of physical abuse by one parent against the other parent or the child;

(g) chemical dependency, as defined in 53-24-103, or chemical abuse on the part of either parent;

(h) continuity and stability of care;

(i) developmental needs of the child;

(j) whether a parent has knowingly failed to pay birth-related costs that the parent is able to pay, which is considered to be not in the child's best interests;

(k) whether a parent has knowingly failed to financially support a child that the parent is able to support, which is considered to be not in the child's best interests;

(l) whether the child has frequent and continuing contact with both parents, which is considered to be in the child's best interests unless the court determines, after a hearing, that contact with a parent would be detrimental to the child's best interests. In making that determination, the court shall consider evidence of physical abuse or threat of physical abuse by one parent against the other parent or the child, including but not limited to whether a parent or other person residing in that parent's household has been convicted of any of the crimes enumerated in 40-4-219(8)(b).

(m) adverse effects on the child resulting from continuous and vexatious parenting plan amendment actions.

¶10    In pertinent part, § 40-4-219, MCA, provides:

6

(1) The court may in its discretion amend a prior parenting plan if it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child.

(a) In determining how a proposed change will affect the child, the court shall consider the potential impact of the change on the criteria in 40-4-212 and whether:

(i) the parents agree to the amendment;

(ii) the child has been integrated into the family of the petitioner with consent of the parents;

(iii) the child is 14 years of age or older and desires the amendment; or

(iv) one parent has willfully and consistently:

(A) refused to allow the child to have any contact with the other parent; or

(B) attempted to frustrate or deny contact with the child by the other parent.

(b) If one parent has changed or intends to change the child's residence in a manner that significantly affects the child's contact with the other parent, the court shall consider, in addition to all the criteria in 40-4-212 and subsection (1)(a):

(i) the feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties;

(ii) the reasons of each parent for seeking or opposing the change of residence;

(iii) whether the parent seeking to change the child's residence has demonstrated a willingness to promote the relationship between the child and the nonrelocating parent; and

(iv) whether reasonable alternatives to the proposed change of residence are available to the parent seeking to relocate.

¶11 Arrington challenges the District Court's conclusions of law regarding the § 40-4-212, MCA, best interest factors, asserting they are unsupported by the court's findings of fact and the case record. Our review of the record does not support her contentions. The contested hearing made clear the parents' wishes sharply diverge, with each seeking to be the primary residential parent if Arrington moves to Idaho. As the District Court correctly concluded, A.M.G. is too young for his stated preferences to meaningfully influence the outcome.

¶12 The District Court's findings thoroughly address A.M.G.'s interaction and interrelationship with his parents, siblings, extended family, and other individuals central to his daily life. The findings reflect that A.M.G. is well-adjusted to his home, school, and community in Missoula. The evidence demonstrates that he participates in football, attends the climbing gym with his Father, fishes and hikes with his grandfather, generally performs well in school, skis with his half-sister, and is fully integrated into the Gambardella family's regular activities and gatherings.

¶13 The District Court found no diagnosed mental health concern for either parent. It did, however, credit Father's testimony as to Arrington tending to prioritize her own preferences over A.M.G.'s needs—a conclusion consistent with the record, including Arrington's personally motivated decision to relocate. The District Court did not find, and the evidentiary record does not support, any physical abuse or threat of physical abuse in the relevant past, or any unresolved chemical dependency issues.

8

¶14   The record further supports that Arrington has historically led a comparatively unstable lifestyle marked by impulsive decision-making.  She has three children with three different fathers, maintains contentious relationships with at least two of them, and was evasive regarding the paternity of her third child.  She has frequently changed residences. Further, she exposed A.M.G. to an individual with a documented history of violence toward women and children, violating the parenting plan and lying to Father in the process.  These findings reasonably informed the court's assessment of stability, continuity, and Arrington's capacity to make sound decisions regarding A.M.G.'s welfare.

¶15   The District Court's order makes clear that A.M.G.'s best interests are served by preserving his long-standing family and community connections in Missoula; that Father is better positioned to provide continuity of care and meet A.M.G.'s developmental needs if Arrington relocates; and that Father is more likely than Arrington to foster A.M.G.'s relationship with the other parent.  We discern no abuse of discretion in the District Court's determination that the § 40-4-212, MCA, best interest factors weigh in favor of A.M.G. residing primarily with Father should Arrington move to Idaho.

¶16   Arrington next argues the District Court failed to apply the statutory factors of § 40-4-219(1)(b) and (4), MCA, and improperly disregarded her evidence.  Father responds that Arrington simply regrets the manner in which she presented her case and her failure to introduce sufficient evidence to support relocating A.M.G. to Idaho.  Father asserts that while Arrington is free to live wherever she chooses, it is not in A.M.G.'s best interests to be uprooted from his family and community to accommodate Arrington's hasty marriage

following a brief relationship—conduct Father characterizes as consistent with her long-standing pattern of instability.

¶17 Arrington essentially contends the District Court should have afforded greater weight to her testimony and evidence. She also argues the court failed to expressly analyze the § 40-4-219(1)(b)(i)-(iv), MCA, factors. Although the District Court stated that its decision was "[b]ased upon the statutory factors provided at Mont. Code Ann. §§40-4-212, 217, and 219" it did not separately enumerate each § 40-4-219(1)(b) factor. While a more explicit discussion would have been preferable, the court's findings and the record demonstrate it considered and applied the required statutory criteria.

¶18 The court found that relocating A.M.G. to Idaho would significantly impair his relationship with Father, as well as his relationships with his half-siblings, grandparents, cousins, step-siblings, and other family and friends in the Missoula area. The court expressly found that Arrington's proposed parenting plan "effectively severs the strong ties between [Father] and his son," directly addressing § 40-4-219(1)(b)(i), MCA.

¶19 The record also leaves no dispute as to Arrington's reasons for relocating; she chose to marry Taylor Arrington, who resides in Caldwell, Idaho, after only a brief courtship. The District Court clearly understood and considered this under § 40-4-219(1)(b)(ii), MCA.

¶20 The court further found that Arrington's proposed parenting plan would afford Father substantially less time with A.M.G. than Father's proposed parenting plan would afford Arrington if A.M.G. remained on a primary basis in Missoula. This disparity reasonably implies Father is more willing than Arrington to promote A.M.G.'s relationship

10

with the other parent. The court also found that Arrington previously lied to Father and violated the parenting plan to facilitate contact between A.M.G. and another paramour[2]—conduct directly relevant to § 40-4-219(1)(b)(iii), MCA.

¶21 Although Arrington presented no evidence of reasonable alternatives to relocating A.M.G., the court found Father researched Caldwell, Idaho, and identified better employment and school opportunities in Missoula. Father proposed that Taylor Arrington could instead relocate to the Missoula area, allowing Arrington to remain near A.M.G.'s established support network. These findings demonstrate the court's consideration of § 40-4-219(1)(b)(iv), MCA.

¶22 Contrary to Arrington's argument, the District Court did apply § 40-4-219(4), MCA—which provides, "The court may amend the prior parenting plan based on subsection (1)(b) to provide a new residential schedule for parental contact with the child and to apportion transportation costs between the parents"—by amending the parenting plan to establish a new residential schedule in the event Arrington relocates.

¶23 The District Court was familiar with the history of this case and the parties' prior proceedings. Based on the evidence presented, it was reasonable for the court to conclude that relocating A.M.G. was not in his best interest. Arrington essentially asks this Court to reweigh the evidence and adopt her preferred interpretation of the record. We decline to do so.

---

[2] Prior to Arrington taking A.M.G. to see this paramour, Father had advised Arrington that her paramour had a history of violence against women and children and expressed that he did not want her exposing A.M.G. to this individual.

¶24 The District Court was in the best position to observe the witnesses, assess their demeanor and credibility, and evaluate their motivations—matters squarely within its province. The District Court was not required to accept Arrington's contested testimony, or that of her witnesses, as accurate or persuasive. Although the District Court could have more explicitly articulated its analysis of the statutory factors—and we encourage such specificity in the future—the court's June 23, 2025 order is sufficiently comprehensive, grounded in the evidence, and adequate to permit meaningful appellate review.

¶25 After issuance of the June 23, 2025 order, Arrington moved to amend the judgment and obtain relief from it, largely raising the same arguments she now reasserts on appeal. Father responded that Arrington was simply dissatisfied with the outcome of trial and had identified no legal or factual basis for altering the judgment. He did, however, acknowledge several minor "housekeeping" errors with the amended parenting plan the court adopted from his proposal and requested correction through a *nunc pro tunc* order. Arrington opposed the request, and the District Court declined to issue a *nunc pro tunc* order, correctly noting that Father would have to work with Arrington to resolve any ambiguities in the plan.

¶26 We agree with the District Court that nothing in the amended parenting plan warrants reversal or remand. That said, the record reflects several minor logistical issues that could reasonably benefit from clarification. Both parties have identified such concerns. Arrington specifically objects to the plan requiring air travel in the winter and that her extended parenting periods occur in Missoula. Arrington also expresses uncertainty about how she is to provide A.M.G.'s health insurance, and requests to use the

"Our Family Wizard" application to facilitate communication with Father. Father, for his part, has stated he is amenable to removing the winter air-travel requirement, to meeting Arrington in Idaho Falls for exchanges during longer parenting periods, and to allowing Arrington to exercise holiday and extended parenting time in Idaho.[3] These positions appear reasonable. As a practical matter, Arrington cannot return A.M.G. to school on Monday morning unless she brings him back to Missoula on Sunday, as the drive is 7 to 8 hours under good road conditions. Thus, if Arrington brings A.M.G. to Missoula, she should be permitted to return him directly to school on Monday morning if she so desires.

¶27 Father also represented that he secured health insurance for A.M.G. through Healthy Montana Kids—the same program Arrington previously used—at no cost to either parent. He further expressed he had no objection to using Our Family Wizard. Despite their contentious history, the parents should be capable of accepting and implementing the areas in which they do agree. These matters are minor housekeeping issues, not grounds for appellate intervention, and we leave them to the parties and their counsel to resolve.

¶28 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶29 Affirmed.

---

[3] The parenting plan does not require Arrington to exercise her extended parenting times in Montana.

/S/ INGRID GUSTAFSON

We Concur:

/S/ LAURIE McKINNON
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ JIM RICE